### ISAAC B. VANDYKE v. JOHN BASTEDO.

In the court for the trial of small causes, the state of demand is no part of the record; and hence it is no objection to the transcript of the Justice, as evidence, that the state of demand was neither produced, nor its non-production accounted for. A transcript of a Justice, cannot be objected to, as evidence—because the judgment was rendered in the absence of the defendant, and without evidence—or because the judgment exceeded in amount, the summons. The judgment so long as it stands unreversed of any court of competent jurisdiction, and the record of such judgment, are of such high veracity and authenticity, that neither their truth nor justice may be denied or questioned, when produced in evidence in any other court, between different parties.

Neither the plaintiff nor defendant in an execution, can defeat the title of a party claiming under it, as a purchaser, by their conduct or admissions.

This was an action on the case in trover, brought by Bastedo, the defendant in error, against Vandyke, to recover damages for the conversion of a pair of mules and a yoke of oxen, sold by Vandyke. The defence set up by the defendant was that he sold the property in question, as the property of John Thompson, by virtue of sundry executions in his hands as Constable of Middlesex, against Thompson.

The following bill of exceptions was allowed by the court, on the trial, and sealed.

This cause coming on to be heard before the Judges of the Inferior Court of Common Pleas, holden at New Brunswick, in and for the said county of Middlesex, on the 22d day of December, 1834, in the presence of the parties and their respective counsels, upon the pleadings as filed, and issue joined in said cause.

The cause being opened to the jury, the plaintiff offered Jacob Schenck as a witness to support the issue on his part, who being sworn, testified that he was one of the Constables of the county of Middlesex; that on the 6th day of May last, he together with M. Gilliland, another Constable of said county, sold the personal property of John Thompson, by virtue of several executions in their hands respectively; that the execu tions held by the witness were, one in favor of John B. Berian against the said John Thompson, dated April 30, 1834, for the sum of ninety-eight dollars and sixty-eight cents debt and one

Vandyke *v.* Bastedo.

dollar and thirty-eight cents costs of suit, and one in favor of Benjamin Hagerman against the said Thompson, of the same date for the sum of ninety-one dollars and seventy-three cents debt, and twenty cents cost of suit.

The plaintiff then offered in evidence, the said two executions and the transcripts of the judgment upon which they were respectively issued.

These transcripts were objected to, by the defendant's counsel, on the ground that the state of demand, of Berian was, not proved in evidence by the plaintiff, or accounted for, which objection the court overruled, and permitted the transcript of said judgment to be given in evidence to the *Jury.* To which opinion of the court so given, the defendant by his counsel, excepted and prayed a bill of exceptions, which was allowed and ordered to be sealed — and it being further objected to the transcript of the judgment of Hagerman, that it was a judgment by confession, without a proper affidavit as required by the act of the Legislature, and therefore void, the court sustained the objection, and rejected the said transcript and execution.

The plaintiff further proved by the testimony of said Schenck, that Mathew Gilliland acted as cryer at said sale, and witness as clerk, that Gilliland commenced the sale of Thompson's property, before witness arrived, and had sold a number of articles before his arrival, among which were the mules mentioned in the plaintiff's declaration, that he understood the plaintiff was the purchaser of said mules, that the whole amount of sales by virtue of the several executions was two hundred and ninety-three dollars and two cents. That the plaintiff who was son-in-law to said Thompson, bought to the amount of eighty-nine dollars and forty-seven cents—John Johnson another son-in-law of said Thompson, bought to the amount of one hundred and eleven dollars and eighty cents—John B. Berian brother-in-law to said Thompson, bought to the amount of forty-six dollars and eighty-two cents, and Benjamin Hagerman to the amount of twenty-eight dollars and fifty-eight cents, and that the balance to wit: sixteen dollars and thirty-five cents was bought by others and paid in cash at the sale—that the plaintiff in this cause, was the purchaser of the oxen in question for the sum of thirty dollars, being less than their value.

The witness further testified that a part of the property sold for much less than its real value, but that the sale while he was present, was a fair and *bona fide* sale, that there were many persons present more than he had seen at a Constable's sale.

The plaintiff then produced the book of sales,—and the witness testified that the articles in the list of sales as contained in the said book, commencing with a pair of mules, and ending with a lamp and pitcher, had been sold by said Gilliland before he arrived at the house of Thompson—and that a separate list had been kept by Gilliland, which was afterwards copied in said book—that when he arrived at Thompson's, the sale was continued by him and Gilliland jointly—Gilliland acting as cryer and witness as clerk. That the first articles sold are contained and mentioned in the said list, in the order in which they stand in said book. Witness also testified that he was present at a sale made by the defendant on the 29th day of May last, of the said mules and oxen, that at that sale the mules brought ninety-two dollars, and the oxen forty-three dollars.

The plaintiff then offered Mathew Gilliland who testified that he had two executions against the said John Thompson, one in favor of George H. Stout, for twenty-six dollars and ninety-seven cents debt and seventy-three cents cost, dated the 2d day of April last, and the other in favour of Sarah Van Nest, for fifty dollars and two cents debt, and one dollar and eighteen cents cost of suit, dated the 30th of April last. That by virtue of these executions he advertised the property of said Thompson for sale on the 6th day of May, and sold the same.

The plaintiff then offered the said executions in evidence, and the transcripts of the judgments upon which they were founded, which evidence the defendant by his counsel objected to, on the ground that it did not appear that there had been a trial or confession of judgment in the former case, and that no state of demand in either case was produced or accounted for, which objection was overruled by the court and the evidence permitted to go to the Jury. To which opinion of the court the defendant by his counsel excepted, and prayed a bill of exceptions which the court allow and order to be sealed.

Vandyke *v.* Bastedo.

The witness then further testified that the first article sold were the mules in question, which were sold to the plaintiff in this cause for forty-one dollars, and that they were *worth* from one hundred and fifty, to two hundred dollars.

That he was present at a subsequent sale by the defendant in this cause, where the said mules were again sold—that at said last mentioned sale a quantity of hay was sold by the defendant and witness became the purchaser. That this was the same hay sold by witness at the previous sale—and being asked whether he got the hay so purchased by him, stated that some lots had been purchased before he bought one, they had removed the hay so that he got none and paid for none.

The witness then further testified, that part of the property of Thompson, sold by him and Schenck, was sold at a price *far* below its value, and that other property brought its full value, and that they got the best price they could. That the brother-in-law and sons-in-law of said Thompson, bought much the greatest part of it; that it was a fair open vendue, and attended by more persons than he ever saw at a Constable's sale.

The plaintiff having rested his cause, the defendant called John Messarole as a witness, who testified that he was present at the sale of Gilliland and Schenck. That the said mules and oxen were sold at a price far below their value—and being asked whether Thompson the defendant in said execution, had not at said sale taken him aside, and requested him not to bid for the property as the plaintiff was bidding the same in for him, Thompson.

The plaintiff by his counsel objected to the question, which objection the court sustained. To which opinion of the court, the defendant excepted, and prayed a bill of exceptions, which was allowed and ordered to be sealed.

The defendant then offered to prove by the declarations and admissions of John B. Berian, the plaintiff in one of said judgments and executions, that his said judgment was without consideration and therefore fraudulent and void. To this evidence, the plaintiff also objected, and the court after argument, sustained the objection and refused the evidence.

To which opinion of the court so given, the defendant also excepted and prayed a bill of exceptions, which the court allowed, and ordered it to be sealed.

*James S. Nevius*, for plaintiff in error.

*C. L. Hardenburgh* for defendant.

HORNBLOWER, C. J. This was an action of trover. The plaintiff below, who is the defendant in this court, claimed title to the property in question, under a purchase at a Constable's sale. Van Dyke the defendant below, had subsequently seized and sold the property, under an execution directed to him as one of the Constables of the county of Middlesex. In support of his title, the plaintiff offered in evidence, the executions under which he purchased, together with the transcripts of the judgments upon which they had been issued.

To the admission of these documents, several objections were made by the defendant below; which objections were over-ruled by the court, and bills of exception thereupon taken—and

1st. To one of the transcripts it was objected, that the state of demand, upon which it was founded, was not produced, nor any excuse given for its non-production.

The state of demand in a court for the trial of small causes, is no part of the record; the Justice is not required by the statute to enter it upon his docket. *Rev. Laws*, 681, *sect.* 41. When the single object is to prove the existence of a judgment, rendered in a court for the trial of small causes, it is sufficient to produce the transcript of the docket, duly exemplified. If it becomes material for the party to show the original cause of action in the court below, or the particular contents of the state of demand filed before the Justice, it may be necessary to produce a sworn or certified copy of it, or to prove that it has been lost or destroyed. But it is not necessary now, to show what would be the proper mode of proof in such case. On this occasion, it was entirely immaterial, what was the ground of action before the Justice. The only question was, whether there had been a judgment, in a competent court, to warrant the execution under which the sale had taken place. There was therefore no error in the decision of the court below.

Vandyke *v.* Bastedo.

2d. To another of the transcripts offered in evidence, the defendant objected on the ground, that it did not appear, either that there had been a trial, or that the judgment had been rendered on confession. The judgment in this case, it appears, was rendered in the absence of the defendant, and without evidence. It is no doubt therefore an erroneous judgment, and might have been reversed, if a reversal had been sought for in a proper manner, and at the instance of the defendant in the suit. But the Court of Common Pleas could not, nor can this court, reject the record on that ground. The judgment is not a nullity, but a valid subsisting judgment, binding on the parties, until avoided by due course of law. It was a sufficient authority for the execution, and therefore a protection to the Constables, and to · *bona fide* purchasers under it. There was no error in overruling this objection.

3d. The defendant offered to prove that Thompson, the defendant in the executions under which the plaintiff claimed title, at the time of the Constable's sales, took the witness aside and requested him not to bid, as Bastedo the plaintiff in this suit, was bidding in the property for him. The court rejected this evidence; and they were clearly right in doing so. It would be destructive to all judicial sales, if a defendant in execution, might endager or defeat a purchaser's title, by exparte representations of his own. It was no doubt competent for the party to show collusion between the purchaser and the defendant in execution; but the evidence offered, had no such tendency. The relationship said to exist between them, could not warrant a recourse to evidence, which between other parties, would be inadmissible.

4th. The defendant next offered to prove that Berian, a plaintiff in one of the executions, under which Bastedo the plaintiff in this suit, claimed title, had admitted that his judgment was without any consideration ; and therefore fraudulent and void as against creditors. This too, the court very properly rejected, for reasons already assigned. Neither the plaintiff nor defendant in an execution, can defeat the title of a party claiming under it as a purchaser, by their conduct or admissions. The near relationship of the parties, and the great undervalue, at

which the articles were purchased by the plaintiff, and the fact if it was so, that the goods were left in the possession of the defendant in execution, were circumstances, calculated to induce suspicion of *fraud.* But whether the transaction was fraudulent or not, we cannot determine, upon this bill of exceptions. No opinion of the court below, appears to have been desired or expressed on that subject; or if it was, no exception was taken to such opinion.

Nor can we reverse the judgment, on the ground of excessive damages. If the court below misdirected the jury on that point, the party should have excepted to the charge. If no charge was required, the court below was not bound to give one. But it does not follow, as the counsel for the plaintiff in error supposes, that because there was a color of right in the defendant, the damages ought to have been for no more than the plaintiff had given for the property. If he was a *bona fide* purchaser, at 90 per cent. below its value, he would be entitled to recover in this action, *its real value;* though under the peculiar circumstances of the case, he might not be entitled to exemplary damages. The judgment must be affirmed, with costs.

FORD, J. This is a case of error. Bastedo brought an action of trover in the common Pleas of Middlesex, against Vandyke for the mules and oxen, formerly the property of John Thompson, sold upon executions against him, and purchased by Bastedo, at a public sale by the Constable. In support of this title, he offered in evidence the records of two judgments and executions against Thompson. These transcripts being objected to by the defendant, were, after argument, admitted in evidence by the court. All the errors assigned are for admission or rejection of evidence contrary, as is alleged, to law, and must be considered *seriatim.*

1st. One of the records of judgment against Thompson, stated that the action was commenced by summons served on him, but did not show in what manner the officer had served it. Another record showed a judgment by default, without the least proof before the justice of the debt; another showed judgment against the defendant for a larger sum than the plaintiff

Vandyke *v.* Bastedo.

demanded. These are errors and irregularity for which the judgments might have been set aside, on a direct proceeding upon them, by *certiorari* or appeal, between the same parties, pursued according to law, within the time limited for that purpose. But the party injured is the only one that can take advantage of them, and he is not compelled to do it; for if he knows that the debt is due, why should he be forced to run himself to further cost and trouble? He may not only cure them by a release, but the law itself will cure them, if he does not complain of them in proper form and in a proper time. The judgment, so long as it stands unreversed, of any court of competent jurisdiction, and the record of such judgment, are of such high veracity and authority, that neither their *truth* nor *justice* may be denied or questioned, when produced in evidence, in any other court, between other parties. Neither the Common Pleas nor this court, has power to inquire into the merits of a judgment rendered before a Justice, unless it be brought before them in a direct proceeding between the same parties, so that both of them may be legally in court to be heard. The record must be received as verity, unless it can be shown to be void for want of jurisdiction in the court that rendered it, or for fraud. There is no pretence that the Justice had no jurisdiction to hear and determine these cases, and no mere error in judgment or proceedings, can go to invalidate his commission, so as to render his judgment a nullity. The court therefore was bound to receive these records in evidence, and had no authority to enquire into or question their regularity, much less to reverse or set them aside.

2d. The defendant offered in evidence, the declarations of Thompson himself, the debtor against whom the executions had been issued, and on whose property they were operating, "that Bastedo, the plaintiff, was bidding in the property for his (Thompson's) benefit," and that the court rejected this evidence. In so doing, they certainly acted rightly. If the debtor whose property is attached by execution, could defeat any sale made in virtue of it, by a simple declaration, which need not even be made under oath, these judicial sales under legal sanction, might all be overthrown. Execution, which is called the life

Vandyke v. Bastedo.

of the law, would immediately become a dead and useless thing, if its operation on the debtor's goods, might be defeated by the declarations of the debtor himself. The debtor is no party to the action of trover, and these are not the confessions of a party, offered in evidence against him, but the declarations of a stranger who is a third person, and who was not under oath. Beside this, suppose Bastedo came to bid at a public sale, and intended, either from feelings of commiseration or friendship, if any of the articles fell to his bid, to devote so much of his property towards the support and comfort of unfortunate friends, would such charitable intent, destroy the validity of the Constable's sale? It is his duty to sell an article to the highest bidder, and he has no right to enquire what use the purchaser may have for it. The evidence at least, was a hearsay not under oath, and if the intent ascribed to Bastedo was true, it could not invalidate the sale, and on both grounds, the evidence was inadmissible.

3d. It is alleged that the sale was fraudulent for two reasons : because the property did not bring half its value, and also because the greater part of it was bid off by the debtor's near relations or immediate friends. Neither of these reasons nor both together, constitute what is called *fraud in law*, and therefore the court had no power to judge of them; they were evidence only to be submitted to the jury, and it was all spread before them, so that the court committed no error in this respect.

4th. The defendant offered to prove that John B. Berian, a plaintiff in one of the executions on which the property in question was sold, had declared " that his judgment against Thompson was without consideration and therefore fraudulent and void;" but the evidence was rejected by the court. An effort is made to justify this rejection on the ground, that if it was voluntary and fraudulent, it would not effect a third person and a purchaser, no way concerned in it, who laid out his money *bona fide* at a public judicial sale, and who must be defrauded of his money, if the sale is void as to him; that fraud should not be used as an engine to work upon innocent people. On the other hand, the statute against fraudulent conveyances, uses words that are very strong and exceedingly broad. *Rev. Laws*, 148, *Section* 2. But I excuse myself

from giving any opinion on this point, because the judgment is *valid*, between the *parties to it;* the statute makes it void *only against creditors;* none else may impeach it in a court of justice. Now is Vandyke, the defendant, a creditor of Thompson? Has he a right to intermeddle with and rip up Thompson's affairs? He is called in the case a *Constable;* but has he an execution in his hands against Thompson in favor of any other *creditor*, and if so, who is that creditor, and where is the execution? If there be such, the evidence of it is the only authority in law, that will or can justify the court, for enquiring into the *merits* and *verities* of a judgment. As there was no such evidence, the court was right in not suffering the merits of the judgment to be enquired into. The court was right on every point therefore, and the judgment must be affirmed.

RYERSON, J. The judgment removed by this writ was rendered in a plea of trespass on the case, for the wrongful conversion of two mules, and a pair of oxen. The defendant below, made title under several judgments against one Thompson, in courts for the trial of small causes, and writs of execution and a sale thereupon. The defendant below, who is plaintiff in this court, attempted to justify the acts complained of as tortious, under other judgments ånd executions against the *same* Thompson; *insisting* that the sale to the plaintiff below was fraudulent. These facts, together with some others, which will be hereafter noticed so far as necessary for a decision of the cause, are disclosed in bills of exceptions attached to the record.

These exceptions apply in the first place, to the admission in evidence by the court below, of the judgments first above referred to for various reasons. The first to be noticed is, that the transcripts of the justice's docket were not accompanied by any statement of demand or declaration. But I am not aware that it has ever been held, or even contended for before, that to make the proof of a judgment of a Justice's court, regular and lawful, not only a transcript from the docket, but also the declaration must be given in evidence. In that court, the declaration does not form any part of the judgment. The record thereof is complete without it. And any party wishing

to avail himself of any matter which the declaration contains, or improperly omits, must give it in evidence himself.    2d. It was objected to one of these records, that the summons was not lawfully served ; to another, that there was no trial, or confession of judgment—and to the third, that the judgment exceeded the amount demanded in the summons.    Whatever effect these objections might have, on a review of the judgments, in a proper proceeding between the parties thereto, it is too well settled that between other parties, when the records are brought only collaterally in question, they can have *none* to need a single remark.    The records were therefore lawfully given in evidence.

Another class of exceptions, relates to certain parol evidence offered by the defendant, and rejected by the court.

First, that Thompson the defendant in the executions, took a person apart at the time of the sale, and requested him not to bid, as the plaintiff below, Bastedo, was to buy in the property for Thompson.    As the plaintiff below purchased under a valid judgment and execution, and at a public sale, his rights cannot be impaired by any matter *in pais,* even if fraudulent in its character, to which he was no party or privy.    He cannot be shown to be such, by the declarations of third persons.    That he was buying in trust for Thompson might be proved by his own admissions, but not by Thompson's.    Thompson's declarations, as against Bastedo, were but hearsay at least.    Thompson himself might have been made a witness to prove the *fact,* or it should have been proved by some other person ; or it might have been left to the jury to draw the inference from other facts in the cause.    If the defendant below, the plaintiff here, cannot establish this trust in this way, it is his misfortune, which cannot change the law ; nor can his want of confidence in Thompson. If Thompson cannot be trusted, when under *oath,* how can we confide in his allegations, when not under that sanction ?    It seems therefore, that this evidence was properly rejected.

Again, it was proposed to prove that Berian the plaintiff, in one of the judgments and executions under which Bastedo purchased, admitted that his judgment was without consideration. But this offer was subject to all the objections of the preceding,

without the plausibility of a declaration proceeding from Thompson, the person supposed to be benefited by the fraud. It was therefore properly rejected.

It has been urged in the written argument submitted to the court, that the property was sacrificed at the sale under which Bastedo claimed; that the first article exposed to sale, should have satisfied the demands under which there was any right to sell; and that the damages were excessive; as well as other considerations of a like character, to show that different decisions should have been made by the court below. These matters might be well urged on the *jury*, to influence their *verdict*, or upon the court, on a motion for a new trial. But they ought not to affect the rules of evidence, and cannot be relied on as grounds of reversal, on a writ of error. I have therefore not been able to perceive any error in the court below, and am of opinion their judgment should be affirmed.

*Judgment affirmed.*

CITED in *Bordine* v *Combs*, 3 *Gr.* 414 ; *Russell* v. *Work*, 6 *Vr.* 318.